**Paul K. Friedrich, OSB #171695**
paulf@fdlawpllc.com
Friedrich & Dishaw, PLLC
92 Lenora Street, #119
Seattle, WA  98121
Tel: 206-360-7655
Attorneys for Plaintiffs
Markel Insurance Company

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **MARKEL INSURANCE COMPANY, a foreign corporation**<br><br>Plaintiff,<br><br>v.<br><br>**MINNESOTA PLACE, LLC, an Oregon limited liability company; CREA MINNESOTA PLACES, LLC ISAOA; an Indiana limited liability company; CREA SLP, LLC ISAOA, an Indiana limited liability company; STEARNS BANK, N.A., a foreign corporation**<br><br>Defendants. | Case No.<br><br>**COMPLAINT** |

The plaintiff, Markel Insurance Company (hereinafter, "Markel"), as and for its Complaint against the above-named defendants, alleges as follows:

## I. PARTIES

1. Markel is a corporation organized and existing pursuant to the laws of the State of Illinois, with its principal place of business located in Glen Allen, Virginia.

2. Minnesota Place, LLC, is an Oregon limited liability company with its principal place of business located at 4351 Southeast Hawthorne Boulevard, Portland, Oregon 97215.

3. Upon information and belief, CREA Minnesota Places, LLC IOAOA, is an Indiana limited liability company with its principal place of business located at 30 South Meridian Street, Suite 400, Indianapolis, Indiana 46204.

4. CREA SLP, LLC ISAOA, is an Indiana limited liability company with its principal place of business located at 30 South Meridian Street, Suite 400, Indianapolis, Indiana 46204.

5. Stearns Bank, NA, is a federally chartered national bank with its headquarters and principal place of business located at 4191 Second Street South, St. Cloud, Minnesota 56301.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 USC § 1332(a)(1), as this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. The Payment Bond and the Performance Bond each have a penal sum of $16,098,793.00 and, therefore, Markel's exposure and the amount in controversy exceed $75,000.00.

7. Venue is proper in this District pursuant to 28 USC § 1391(b), as a substantial part of the events or omissions giving rise to the claims alleged herein occurred within this District.

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

## III. STATEMENT OF FACTS

### A. The Contract

8. On or about March 13, 2022, Minnesota Place, LLC (hereinafter, "Minnesota Place"), as the Owner, entered into a construction contract (hereinafter, the "Construction Contract") with Lorentz Bruun Construction, Inc. (hereinafter, "LBC"), as the Contractor, for the construction of the Minnesota Place Apartments, located at 1206 – 1208 N. Jessup & 5627 N. Minnesota, Portland, Oregon 97217 (hereinafter, the "Project").

9. The Construction Contract is a standard form of agreement known as the A101 – 2017, drafted by the American Institute of Architects (hereinafter, "AIA").

10. In the Construction Contract, Minnesota Place and LBC agreed that LBC would perform the construction and other obligations described therein in exchange for payment of $16,098,793.00.

11. The contract sum was subject to additions and deductions over the course of the Project, as changes may be made to the Project adding to or reducing the scope of work.

### B. The Bonds

12. Markel issued Payment and Performance Bond No. 4449924 (each hereinafter referred to separately as the "Payment Bond" and the "Performance Bond" and collectively as the "Bonds"), as surety, on behalf of LBC, as principal, and Minnesota Place, as obligee.[1]

13. The Performance Bond was issued in the penal sum of $16,098,793.00.

14. The Payment Bond was issued in the penal sum of $16,098,793.00.

---

[1] The Bonds are attached to this Complaint as **Attachment A**.

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

15. On or about March 30, 2022, Markel issued a Rider to the Bonds adding CREA Minnesota Places, LLC ISAOA; CREA SLP, LLC ISAOA; and Stearns Bank, N.A. (hereinafter, "Stearns"), as additional obligees to the Bonds.[2]

16. The Performance Bond is a standard form known as the AIA A312 (2010) performance bond, drafted by the AIA.

17. The Payment Bond is a standard form known as the AIA A312 (2010) payment bond, drafted by the AIA.

18. The Construction Contract mandated the use of the A312 bond forms.

## C. The Performance Bond

19. The Performance Bond contains various conditions precedent that the Defendants must satisfy before Markel's obligations under the Performance Bond mature.

20. Section 3 requires that there not be an "Owner Default" (as defined in the Performance Bond) under the Construction Contract.

21. Section 3.1 requires that Minnesota Place, as Owner, provide notice to LBC and Markel that Minnesota Place is "considering declaring a Contractor Default."

22. Under Section 3.1, Minnesota Place may request a conference with LBC and Markel to discuss Markel's performance in such notice.

23. Section 3.2 requires that Minnesota Place declare a "Contractor Default", terminate the construction contract, and notify Markel thereof.

---

[2] Minnesota Place, LLC; CREA Minnesota Places, LLC ISAOA; CREA SLP, LLC ISAOA; and Stearns Bank, N.A. are collectively hereinafter referred to as the "Obligees."

24. Section 14.3 defines "Contractor Default" as "[f]ailure of [LBC], which has not been remedied or waived, to perform or otherwise to comply with a material term of the Construction Contract."

25. Section 3.3 requires that Minnesota Place "agree[s] to pay the Balance of the Contract Price in accordance with the terms of the Construction Contract to [Markel] or to a contractor selected to perform the Construction Contract."

26. Section 14.1 defines "Balance of the Contract Price" as [t]he total amount payable by [Minnesota Place] to [LBC] under the Construction Contract after all proper adjustments have been made, including allowance to [LBC] of any amounts received or to be received by [Minnesota Place] in settlement of insurance or other claims for damages to which [LBC] is entitled, reduced by all valid and proper payments made to or on behalf of [LBC] under the Construction Contract.

27. Under Section 5, "[w]hen [Minnesota Place] has satisfied the conditions of Section 3, [Markel] shall promptly and at [Markel's] expense take one of the following actions", with Sections 5.1 through 5.4 listing the specific actions that Markel may elect.

28. Section 5.1 provides that Markel may "[a]rrange for [LBC], with the consent of [Minnesota Place], to perform and complete the Construction Contract."

29. Section 5.2 provides that Markel may "[u]ndertake to perform and complete the Construction Contract itself, through its agents or independent contractors" that it selects to complete.

30. Section 5.3 describes what is known as a "tender", where Markel obtains bids to complete the Construction Contract, arrange for a new contract between the Obligees and the selected bidder, and pay the Obligees the difference between the bidder's price to complete the Construction Contract and the Balance of the Contract Price.

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

31. Section 5.4 allows Markel to waive its rights under Sections 5.1, 5.2, and 5.3, and either (a) investigate and determine the amount of its liability under the Performance Bond and pay that amount to the Obligees (Section 5.4.1) or (b) "[d]eny liability in whole or in part and notify the [Minnesota Place], citing the reasons for denial."

32. The purpose of Section 5 is to allocate to Markel the opportunity to mitigate its damages and control its loss, by allowing Markel to determine the manner in which it will satisfy its Performance Bond obligation as listed in Sections 5.1, 5.2, 5.3, and 5.4.

33. Markel would not have executed the Performance Bond without receiving the rights contained in Section 5 of the Performance Bond.

34. The obligation that the conditions precedent in Section 3 must be satisfied before Markel's obligation under the Performance Bond arises ensures that Markel is afforded this opportunity to mitigate its damages and control its loss.

**D.     The Payment Bond**

35. The Payment Bond contains various conditions precedent that must be satisfied before Markel's obligations under the Payment Bond matures.

36. Section 1 provides that "[LBC] and [Markel], jointly and severally, bind themselves… to [Minnesota Place] to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract…"

37. The Payment Bond is limited in its coverage to the protection of Claimants.

38. Section 16.2 defines "Claimants" as follows:

> An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials, or equipment for use in the performance of the Contract. The term 'Claimant' also includes any individual or entity that has rightfully asserted

> a claim under an applicable mechanic's lien or similar statute against the real property upon which the Project is located. The intent of this Bond shall be to include without limitation in the terms 'labor, materials, or equipment' that part of the water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Contract, architectural and engineering services required for performance of the Work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials, or equipment were furnished.

39. Section 16.1 of the Payment Bond defines a "Claim" as a written demand by a Claimant seeking payment of a sum certain under the Payment Bond for labor, materials, or equipment furnished for use in the performance of the Construction Contract.

40. Section 13 provides the method and manner in which a Claimant provides notice of its Claim to Markel, Minnesota Place, and LBC.

41. Sections 5, 5.1, and 5.2 establish the conditions precedent to Markel's obligation to respond to a Claim submitted by a Claimant, including the requirement that any Claim be submitted to Markel in compliance with the Payment Bond's notice requirements.

42. Sections 7, 7.1, and 7.2 specify Markel's limited obligations once the Claimant has satisfied the procedural requirements of Section 5.

43. Section 12, applying exclusively to Claimants, provides that any legal action under the Payment Bond must be brought in a court of competent jurisdiction in the location where the construction project is situated and within one year after the Claimant last performed labor or furnished materials or equipment.

44. The Payment Bond contains no provision authorizing suit or enforcement by any individual or entity other than a "Claimant" as defined in Section 16.2.

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

**E.     The Dispute Between Defendants and LBC**

45.     On September 9, 2024, Minnesota Place, through counsel, sent correspondence to counsel for LBC informing LBC that it was in breach of the Construction Contract.

46.     Specifically, Minnesota Place alleged that LBC had failed to complete the Project by the deadline set forth in the Construction Contract and that LBC could not complete the Project for the Contract Price.

47.     Despite this September 9, 2024 correspondence, Minnesota Place did not declare LBC in default or terminate the Construction Contract.

48.     In fact, on January 3, 2025, Minnesota Place, through counsel, informed Markel that "[Minnesota Place] is attempting to restart the project with [LBC], but [LBC's] cooperation will be essential to any successful restart."[3]

49.     However, on January 24, 2025, LBC filed suit against Minnesota Place and Stearns under Multnomah County District Court Case No. 24CV58381 alleging breach of contract and seeking a declaratory judgment that Minnesota Place was in breach of the Construction Contract.

50.     As of the date of this Complaint, however, neither Minnesota Place nor any other Defendant has declared LBC in default or terminated the Construction Contract with LBC.

**F.     The Defendants Demand that Markel Perform Pursuant to the Performance Bond, Despite Having Failed to Satisfy the Conditions of Section 3.**

51.     Section 3 of the Performance Bond establishes that Markel's obligations do not arise unless and until Minnesota Place has (1) first provided written notice to LBC and Markel

---

[3] Minnesota Place's January 3, 2025 correspondence is attached to this Complaint as **Attachment B**.

that it is considering declaring a Contractor Default (§ 3.1); (2) convened a meeting with Markel and LBC, if requested, to discuss the situation (§ 3.2); (3) formally declared LBC in default and terminated the LBC's right to complete the Construction Contract (§ 3.3); and (4) agreed to pay the Balance of the Contract Price to Markel or to a completion contractor selected to perform the remaining Work (§ 3.3).

52. Pursuant to Section 5 of the Performance Bond, Markel has no obligation to perform until Minnesota Place and the Obligees satisfy the conditions in Section 3.

53. None of the Defendants have declared LBC to be in default and terminated the Construction Contract or agreed to pay the Balance of the Contract Price to Markel

54. Again, in its January 3, 2025, correspondence to Markel, Minnesota Place, through counsel, confirmed that "[Minnesota Place] is attempting to restart the project with [LBC], but [LBC's] cooperation will be essential to any successful restart."

55. Similarly, in its January 17, 2025 correspondence to Markel, Stearns, through counsel, stated concerns with LBC's performance of the Construction Contract, but it did not declare LBC in default.[4]

56. While no Defendant has complied with Section 3 of the Performance Bond, Minnesota Place and Stearns, through correspondence, have requested that Markel satisfy its obligations under the Performance Bond.

---

[4] Stearns' January 17, 2025 correspondence is attached to this Complaint as **Attachment C**.

57. Specifically, in its April 3, 2025, correspondence, Stearns, through counsel, accused Markel of failing to fulfil its obligations to investigate Claims against LBC and to "answer and pay or arrange for payment within 60 days after receipt of the claim."[5]

58. Markel's obligation to investigate and issue payment under the Performance Bond, however, arise only after Defendants have complied with Section 3 of the Performance Bond.

59. On April 18, 2025, Markel, through counsel, sent correspondence to Stearns informing Stearns that Markel had no obligation to perform under the Performance Bond because the Defendants had failed to satisfy Section 3 of the Performance Bond.[6]

60. The Defendants have not complied with Section 3 of the Performance Bond, and, therefore, Markel has no current obligation to perform until the conditions of Section 3 are satisfied.

### G. The Defendants Demand that Markel Perform Under the Payment Bond, Despite Not Having Standing to Enforce the Payment Bond

61. The Defendants lack standing to enforce the Payment Bond because the bond expressly limits enforcement rights to "Claimants," defined in Section 16.2 as individuals or entities that have furnished labor, materials, or equipment pursuant to a direct contract with LBC.

62. The Defendants, through correspondence dated January 3, 2025, January 17, 2025, and April 3, 2025, have cited Markel's obligation to satisfy construction liens filed against the Project.

---

[5] Stearn's April 3, 2025 correspondence is attached to this Complaint as **Attachment D.**

[6] Markel's April 18, 2025 correspondence is attached to this Complaint as **Attachment E**.

63. As of January 3, 2025, Minnesota Place alleged that Markel had an obligation to satisfy construction liens in the amount of $314,637.37.

64. On April 18, 2025, Markel through counsel, sent correspondence to Stearns informing Stearns that, as an Obligee, Stearns was not a proper Claimant under the Payment Bond, and, therefore, lacked standing to enforce the Payment Bond against Markel.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION – DECLARATORY JUDGMENT

### (PERFORMANCE BOND)

65. Markel incorporates by reference Paragraphs 1 – 64 as though fully stated herein.

66. This is an action for declaratory judgment under 28 U.S.C. §§ 2201.

67. Defendants have asserted that Markel has not satisfied its obligations under the Performance Bond.

68. Defendants failed to satisfy the conditions precedent contained in Section 3 of the Performance Bond.

69. As a result, Markel's obligation under the Performance Bond have not ripened and cannot ripen unless and until Minnesota Place satisfies the preconditions in Section 3 of the Performance Bond.

70. An actual controversy exists among the parties as to Markel's obligations under the Performance Bond, if any.

### SECOND CAUSE OF ACTION – DECLARATORY JUDGMENT

### (PAYMENT BOND)

71. Markel incorporates by reference Paragraphs 1 – 64 as though fully stated herein.

72. This is an action for declaratory judgment under 28 U.S.C. §§ 2201.

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

73. Defendants have asserted that Markel has not satisfied its obligations under the Payment Bond.

74. Defendants lack standing to assert claims under the Payment Bond against Markel, because Defendants do not qualify as Claimants as defined by the Payment Bond and case law interpreting the Payment Bond.

75. As a result, Markel has no liability to Defendants under the Payment Bond.

76. An actual controversy exists among the parties as to Markel's obligations under the Payment Bond, if any.

77. Pursuant to 28 U.S.C. § 2201, Markel requests judgment declaring that (a) its obligations under the Performance Bond have not matured because Defendants failed to satisfy the conditions precedent set forth in Section 3 of the Performance Bond, and (b) Defendants lack standing to enforce the Payment Bond against Markel, because Defendants do not fall within the definition of "Claimant" as set forth in the Payment Bond.

## V. **PRAYER FOR RELIEF**

Wherefore, Markel requests judgment in the form of an Order declaring as follows:

(A) That Markel's obligation, if any, to Defendants under the Performance Bond has not matured because Defendants have failed to satisfy the conditions precedent set forth in Section 3 of the Performance Bond.

(B) That Defendants lack standing to enforce the Payment Bond against Markel, because Defendants do not fall within the definition of "Claimant" as set forth in the Payment Bond.

FRIEDRICH & DISHAW, PLLC
92 Lenora Street, Suite 119
Seattle, Washington 98121
Tel: 206-360-7655

Dated May 7, 2025.

          FRIEDRICH & DISHAW, PLLC


/s/ Paul K. Friedrich
Paul K. Friedrich WSBA #43080
Friedrich & Dishaw, PLLC
OSB #171695
*Attorney for Plaintiff*
*Markel Insurance Company*